## THE POTTSVILLE IRON AND STEEL CO. v. G. W. GOOD.

ERROR TO THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY.

Argued April 21, 1887—Decided May 16, 1887.

A laborer by the week, at a fixed rate, but for an unspecified time, is bound by an engagement that if he quit the employment without giving notice for a certain time beforehand, he shall forfeit the pay due him when so quitting.

Before MERCUR, C. J., GORDON, TRUNKEY, GREEN and CLARK, JJ.; PAXSON and STERRETT, JJ., absent.

Statement of Facts.

No. 391 January Term 1887, Sup. Ct.; Court below, No. 117 July Term 1886, C. P.

In an action before a justice by George W. Good against The Pottsville Iron & Steel Company, at Pottsville, for wages as an employee, the justice gave judgment for the plaintiff, when an appeal was taken by the defendant.

On the trial in the court below, it was shown that the plaintiff was a machinist and draftsman, but being unemployed in that work, sought and obtained employment as a roll-turner with the defendant company on January 4, 1886, at $9 per week, but for an unspecified time. He was not then informed of a rule of the company requiring fourteen days notice by an employee of an intention to quit, in default of which the pay due at the time of quitting was to be forfeited. The rule is printed on time-cards, or " dividers," upon which appears also a statement of the account of the employee, and the card is handed to the employee at the end of each month, to be receipted and returned on the third Saturday of the following month when payment is made. The plaintiff admitted that he knew of the rule on February 20, 1886, when he signed the " divider " for the month of January, which when signed was as follows:

No. 306. Pottsville Rolling Mills, Jan., 1886.
GEORGE GOOD, R. T.,

In account with the POTTSVILLE IRON & STEEL Co.

| To cash advanced,............... | By | | days, | | |
|---|---|---|---|---|---|
| " assignments, ................. | " 25¼ | " | 1.50 | 37.88 |
| " boarding, ................... | " | " | | |
| " rent,........................ | Tons, Cwt, Qr. Lbs. | | | |
| " cash balance,. ...........37.88 | | | | 37.88 |

Employees must give fourteen days notice when they wish to leave our employ. If they do not give the notice required, it is agreed and understood that they forfeit all wages due them at the time they so quit work, without the required fourteen days notice.

POTTSVILLE IRON AND STEEL Co.
Received payment, 2, 20, 1886.

GEO. W. GOOD.

The plaintiff signed a similar time-card on March 20, 1886, for the pay for February; but on March 31, 1886, having received an offer of employment at his trade of machinist and draftsman from another company at higher wages, he quitted the defendant company on a notice of one day and a half. Subsequently, payment of his wages for March being refused by defendant, he brought suit therefor.

The court, O. P. BECHTEL, J., after reviewing the testimony, charged the jury:

As there is no dispute upon two of the propositions in this case, first, as to the amount of money which this man has earned, if he is entitled to recover it at all; and second, the fact that he did not give two weeks notice, we regard this as entirely a question of contract; what was the bargain between this plaintiff and the defendant? Of course, this plaintiff would be, just as any other plaintiff, bound by any contract or bargain which he makes with a party when he goes into their employ. He is as much required to observe the terms and conditions of this contract as any other person would be who enters into a contract and either labors or agrees to do any other matter or thing. Parties are required to live up to their contracts.

First, then, what was the contract between the plaintiff and defendant? If you should find that, at the time he went to work for the defendant there was in existence at that place, and, according to Ziebach's testimony, there was a rule that all employees were required to give two weeks notice before they quit work, and, as a penalty for their failure so to do, to forfeit what was then due to them for their services; and second, that he had knowledge of the existence of that rule at the time he made his bargain with Sharpless in January, or that, after he had worked a certain length of time, he made a bargain with the company thereafter to be governed by such rule, which required him to give two weeks notice prior to his leaving the employ of his employer; in either such case, or in case you find either of these two matters in this way, it would be your duty to render a verdict in favor of the defendant, because it would place the plaintiff in the position of having bargained to give that notice, and of having failed to observe the provisions of his own contract.

[If, upon the other hand, you should find that, at the time he entered the employ of the defendant, it was entered through a bargain made with Sharpless, and either that there was no such rule in existence at the time, or, if there were, that the plaintiff had no knowledge of any such rule, and entered the employ of the defendant without any knowledge of the existence of such rule; that there was no definite time fixed as to how long he should labor for his employer, but that the employment continued until it was terminated either by the act of the employer or the act of the employee; then we think it would be your duty to render a verdict in favor of the plaintiff for the full amount of his wages, with the interest on it from the time it became due and payable under the contract between the plaintiff and the defendant; for, in such case, the plaintiff would be in the position of not having contracted to give two weeks' notice before he quit the employ of the defendant, and, of course, would not be required to do that, which he did not agree to do. And as you determine this question, so your verdict will necessarily have to be.] [1]

The jury returned a verdict for the plaintiff $51.25, whereupon the defendant company took this writ, assigning for error:

1. That part of the charge embraced in [ ] [1].

*Mr. D. C. Henning*, for the plaintiff in error:

The condition precedent to the plaintiff's right to recover being shown by the plaintiff himself not to have been performed, the court should have directed the jury to find for the defendant.

In Wright v. Trainer, 32 Leg. Int. 62 (court below, 1 W. N. 198), this court said: " The judge's charge was sound. He submitted to the jury the plaintiff's knowledge of the third rule of the defendants, posted up in their factory. A large establishment, such as this, must have general rules for the guidance of their employees. If the third rule were known by the plaintiff when he hired his minor children to the defendant it forms a part of his contract. It became an agreement that if the children left without notice, he should not be entitled to receive their wages for the last two weeks. There is great reason for this in a large factory where labor is divided

systematically, and where the loss of hands in one branch may be followed by the want of material to supply other branches and keep them employed at work. This loss is scarcely capable of a distinct computation, where a number of hands are thrown idle or upon partial work by the want of material from the earlier branches. The case is, therefore, a proper one for liquidated damages, agreed upon as two weeks."

*Mr. William Wilhelm,* for the defendant in error:

The original contract of employment must prevail unless there is shown to have been some clear and definite modification subsequently agreed upon by the parties. The mere signing of the receipt below the statement signed by the company could not impose a new duty upon the plaintiff : Harrisburgh v. Huston, 11 W. N. 389 ; Rumberger v. Golden, 99 Penn. St. 34.

OPINION, MR. JUSTICE GREEN :

While it is true that when the plaintiff was employed to work for the defendant nothing was said as to the fourteen days notice of an intention to quit, it is also true that no definite time of employment was fixed, and the terms of the first engagement would not necessarily extend beyond the time of the first payment. When the first payment was made the plaintiff signed a receipt which contained the following provision : " Employees must give fourteen days notice when they wish to leave our employ. If they do not give the notice required, it is agreed and understood that they forfeit all that is due them at the time they so quit work without the required fourteen days notice." The plaintiff was under no obligation to sign any receipt containing such a provision. If the company had refused his pay because of his declining to sign the receipt he could have compelled them to pay by means of an action. But he signed it without objection, and he testifies that at that time he knew of the rule embodied in the receipt, and continued to work for the company with that knowledge. This was in February, 1886, and the wages paid were due for the month of January. In March he signed a similar receipt, for the February pay, and quit working for the company on March 31, upon a notice of a day and a half. The present

action is brought to recover the wages earned in March, whicn the defendant refused to pay because the fourteen days notice had not been given.

This defence seems to be an ungracious one, in view of the fact that the defendant had received the benefit of the plaint- iff's work for the whole month, and because he was compelled to choose between the loss of a much better job on the one hand or the forfeiture of a month's pay on the other, and therefore cannot be said to have left his employment arbitrarily and without reason. It is possible that some employers might in such circumstances have been willing to waive the defence founded upon the strict terms of the contract, but this defend- ant insists upon its rights and we have no discretion to refuse them.

The regulation requiring the fourteen days notice of an inten- tion to quit work is not an unreasonable one. Indeed, in large establishments like this, where very great loss may be inflicted by a sudden and extensive strike of the men, such a rule seems to be an entirely proper and reasonable means of protec- tion against wanton and ruthless injury in this manner. We said this in the case of Wright v. Trainer, 32 Leg. Int. 62, holding the party bound by mere knowledge of such a rule posted up in the factory. We decided that mere knowledge of the rule made it part of the contract, saying : " If the third rule was known by the plaintiff when he hired his minor chil- dren to the defendant it forms a part of his contract. It be- came an agreement that if the children left without notice, he should not be entitled to receive their wages for the last two weeks." The present case is far stronger in its facts. Here the stipulation is inserted in the receipt for the wages, paid, and is a part of the express contract of the parties under which the future employment continues. The past wages are no part of the consideration for the future engagement. The paper is to be treated as the evidence of a new contract for the future, made with a full knowledge of its exact meaning on the part of the plaintiff. There is no escape from this conclusion. There is nothing in the case but the construction of a written agreement.

Judgment reversed.